[No. 19399. Department Two.—September 1, 1894.]

## J. W. SEFTON, RESPONDENT, v. W. B. PRENTICE ET AL., APPELLANTS.

WATER RIGHTS—CONSTRUCTION OF CONTRACT—CUTTING HOLE IN PIPE.— A contract for the furnishing of water to the party of the second part, his executors and assigns, to be delivered at the northwest corner of a specified section of land, "through and from a pipe, flume, or conduit," to be constructed by the party of the first part, does not give to the party of the second part, nor any of his successors or assigns, the right to cut a hole in a pipe constructed one hundred and seventy feet in elevation above the corner specified, or to attach another pipe to it hermetically, or to use the pressure which it affords, for the purpose of carrying water upon land above the elevation of the corner section not originally owned by the party of the second part, at the date of the contract.

ID.—USE OF CONDUIT—PRESSURE.—The provision of the contract that the water was to be delivered "through and from a pipe, flume, or conduit," does not imply a contract to deliver any part of the conduit itself, or the furnishing of any "pressure" therefrom, but merely includes such delivery of the water bargained for as would give to the party of the second part the reasonable opportunity of taking possession of the water delivered when separated from the conduit.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*V. E. Shaw*, and *Gibson & Titus*, for Appellants.

*E. W. Britt*, for Respondent.

McFARLAND, J.—This action is somewhat difficult to classify. Its purpose is to obtain an injunction to prevent defendants from preventing plaintiff from attaching a water-pipe to a certain water pipe of defendants. Judgment went for plaintiff, and defendants appeal from the judgment and from an order denying their motion for a new trial.

The decision of the case rests upon the respective rights of the parties under a certain written contract made by appellants on March 24, 1891, with one Frederick

T. Hill.    At that time appellants contemplated building
some kind of a conduit to carry water from the large
ditch of the San Diego Flume Company to Spring Val-
ley, where they owned lands.   This contemplated conduit
was to run near to and past a point called "Patterson's
corner," which was about two and one-half miles distant
from the flume of the said San Diego Flume Company.
Hill (as trustee) owned a part of lot 9, Ex-Mission rancho,
consisting of about three hundred acres of land lying
south of, and most of it lower in elevation than, said
Patterson's corner.    Appellants at that time had not
determined what kind of a conduit they would construct
for the purpose of carrying said water.    Under these
circumstances they and Hill entered into said contract,
which provided, generally, that appellants would deliver
to Hill, his executors, etc., and "assigns," at said Pat-
terson's corner, for twenty-five years, such amount of
water as Hill would purchase and furnish from the said
San Diego company's flume, not exceeding ten miner's
inches, in consideration of one thousand dollars, which
it is admitted was paid.    Appellants were to begin to
deliver the water within six months of the date of the
contract.    Within that time the said conduit was com-
pleted, and when completed it consisted of an open
flume for about two-thirds of its length, beginning at
the flume of the San Diego company, and the remain-
ing one-third consisted of an iron pipe, about five hun-
dred feet thereof next to the flume being six inches in
diameter, and the rest to and past said Patterson's corner
being four inches in .diameter.    The point at which the
pipe commences is about one hundred and seventy feet
in elevation above said Patterson's corner; and it is
continued over a hill to lands of appellants, and by force
of the pressure water is carried to appellants' said lands,
and also to lands of other persons to whom appellants
furnish water.    When it was completed Hill was not
prepared to use the water on the land on said lot 9,
Ex-Mission rancho, and no request was made for the
water mentioned in said contract until the month of

April, 1893.  At this last-named date the respondent herein, Sefton, was the owner of land lying easterly and about three thousand feet distant from said Patterson's corner, and about seventy-five feet higher in elevation; and he also owned two miner's inches of water flowing in the said San Diego company's flume, with the right to take the same from said flume.  He laid an iron pipe from his land to or near Patterson's corner, and claiming that by certain assignments he had acquired all of Hill's interest in said contract, he demanded of appellants that they allow him to attach his pipe to theirs, so that by the pressure in appellants' pipe the two inches of water would be carried over the elevation to respondent's said land.  This appellants refused to do, but they offered to furnish and turn out to him the two inches of water at Patterson's corner.  Respondent then commenced the present action, and by the judgment of the court appellants were enjoined—or rather commanded—to allow respondent to attach his pipe to theirs and furnish him the said pressure.

We pass over the preliminary points made by appellants; that is, whether the word "assigns" in the contract was not intended in the limited sense of meaning only the successors of Hill in the land in said lot 9; whether the attempted assignment of a certain alleged "receiver" was valid; and whether, under any view, injunction was the proper remedy.  Assuming none of these points to be well taken, we are satisfied that, under the contract, neither Hill nor any of his successors or assigns had a right to cut a hole in appellants' pipe, attach another pipe to it hermetically, or use the pressure which it afforded.  None of these things were covenanted for in the contract upon which respondent bases his right of action.

The contract simply provides that appellants "will deliver to the party of the second part (Hill), his executors," etc., the amount of water before mentioned, "near F. E. Patterson's northwest corner in section 29," etc.  The words of the contract upon which respondent

mostly relies, are these: "Said water to be delivered *through and from* a pipe, flume, or conduit, to be constructed" by appellants, and great stress is laid upon the word "from" by respondent and the court below. "Every word of the contract," it is argued, "must be given some force and meaning." Of course, in construing a writing, every word which, taken in connection with the other language used, has a distinctive meaning, and in any way qualifies the context, must be considered. But the makers of conveyances and contracts, as well as the makers of laws, are sometimes tautological, and needlessly repeat an idea in different words and phrases. The contract under consideration would be the same if the word "from" were not in it. No water running in appellants' pipe could possibly be delivered at Patterson's corner, in any manner whatever, without being taken *from* said pipe. Otherwise, it would inevitably run past said point. The word "from" simply expresses the general idea of *separation*. Some of its definitions given by Webster are: "Out of the neighborhood of"; "leaving behind"; "out of"; "the antithesis and correlative of *to*." By the contract appellants were to construct some kind of a conduit—any kind that they might choose—and through it to carry and deliver to Hill, at Patterson's corner, a certain amount of water; but they did not contract to deliver to Hill any part of the conduit itself. "Conduit" is a general word, which applies to any channel or structure by which flowing water can be conducted from one point to another. It includes a ditch, flume, pipe, or any kind of aqueduct. Appellants chose to use a pipe as part of their conduit; but they did not agree to give Hill possession of any part of the pipe, for the purpose of cutting a hole in it, and permanently occupying it by his attached pipe, or for any other purpose. And there is not a word in the contract about the furnishing of any "pressure." The contract to "deliver" the water, no doubt, included such delivery as would give Hill a reasonable opportunity of taking possession of the water

delivered; but to sanction the claims of respondent in the premises would be for the court to make a contract for the parties different from that which they made for themselves.

It is contended that the attachment of respondent's pipe to that of appellants would not injure the latter. There is considerable evidence that it would be an injury to appellants; but a man has no right to commit a trespass upon the property of another because in the opinion of the trespasser or of a court it would do the owner of the property no harm. Neither is it of any consequence that after the pipe of appellants had been constructed they furnished water through connecting pipes to a few persons other than respondent. They had the right, of course, to make such a contract with another person if they chose to do so, but they made no such contract with Hill or his assigns.

The foregoing views are determinative of the appeal adversely to respondents; and as they cover the merits of the whole case it is not necessary to notice in detail the various specific points made by appellants. The case was decided in the court below upon the theory that, under the written contract between Hill and the appellants, the latter are compelled to allow the assigns of Hill to permanently attach a pipe to the pipe of appellants; and this, in our opinion, is not a correct construction of said contract.

Judgment and order reversed.

FITZGERALD, J., and DE HAVEN, J., concurred.

Hearing in Bank denied.